IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

QUINTON S.,[1]

        Plaintiff,

v.

COMMISSIONER, Social Security Administration,

        Defendant.

No. 3:17-cv-1554-HZ

OPINION & ORDER

HERNÁNDEZ, District Judge:

Plaintiff brings this action for judicial review of the Commissioner's final decision denying his application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act and Disability Insurance Benefits ("DIB") under Title II of the Social Security Act in part. The Court has jurisdiction under 42 U.S.C. § 405(g) (incorporated by 42 U.S.C.

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party or parties in this case. Where applicable, this opinion uses the same designation for non-governmental party's immediate family members.

1 - OPINION & ORDER

§ 1382(c)(3)). Because the Administrative Law Judge (ALJ) improperly discounted Plaintiff's subjective symptom testimony, the Court REVERSES the Commissioner's decision and REMANDS this case for further administrative proceedings.

## BACKGROUND

Plaintiff was born on June 19, 1960 and was fifty-two years old on November 27, 2012, the alleged disability onset date. Tr. 20, 49.[2] Plaintiff met the insured status requirements of the Social Security Act ("SSA" or "Act") through December 31, 2015. Tr. 23. Plaintiff has at least a high school education but is unable to perform any past relevant work. Tr. 31. Plaintiff claims he is disabled based on: lumbar degenerative disc disease; right shoulder osteoarthritis; left acromioclavicular joint arthritis; obesity; left knee degenerative joint disease; hypertension; gastroesophageal reflux disease; depression; anxiety; and a history of cocaine abuse. Tr. 23–4. Plaintiff's benefits application was denied initially on March 17, 2014, and upon reconsideration on November 24, 2014. Tr. 20. A hearing was held before Administrative Law Judge Jo Hoenninger on April 25, 2016. Tr. 42–80. ALJ Hoenninger issued a written decision on June 2, 2016, finding that, as of June 19, 2015, Plaintiff was disabled and entitled to benefits. Tr. 20–34. Plaintiff was therefore not disabled or entitled to benefits between November 27, 2012 and June 18, 2015. Tr. 20–30. The Appeals Council declined review, rendering ALJ Hoenninger's decision the Commissioner's final decision that Plaintiff now challenges in this Court. Tr. 1–6.

The central issue here is whether the ALJ properly determined that Plaintiff was not disabled during the relevant time period: November 27, 2012 through June 18, 2015.

## SEQUENTIAL DISABILITY ANALYSIS

A claimant is disabled if she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can

---

[2] Citations to "Tr." refer to the administrative trial record filed here as ECF No. 11.

be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability claims are evaluated according to a five-step procedure. *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009). The claimant bears the ultimate burden of proving disability. *Id.*

At the first step, the Commissioner determines whether a claimant is engaged in "substantial gainful activity." If so, the claimant is not disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520(b), 416.920(b). At step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140–41; 20 C.F.R. §§ 404.1520(c), 416.920(c). If not, the claimant is not disabled.

At step three, the Commissioner determines whether claimant's impairments, singly or in combination, meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Yuckert*, 482 U.S. at 141; 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the Commissioner proceeds to step four. *Yuckert*, 482 U.S. at 141.

At step four, the Commissioner determines whether the claimant, despite any impairment(s), has the residual functional capacity ("RFC") to perform "past relevant work." 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can, the claimant is not disabled. If the claimant cannot perform past relevant work, the burden shifts to the Commissioner. At step five, the Commissioner must establish that the claimant can perform other work. *Yuckert*, 482 U.S. at 141–42; 20 C.F.R. §§ 404.1520(e) & (f), 416.920(e) & (f). If the Commissioner meets its burden and proves that the claimant is able to perform other work which exists in the national economy, the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

## THE ALJ'S DECISION

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged disability onset date. Tr. 23.

At step two, the ALJ determined that Plaintiff "had the following severe impairments: lumbar degenerative disc disease; right shoulder osteoarthritis; left acromioclavicular joint arthritis; obesity; left knee degenerative joint disease; and hypertension." Tr. 23–24. The ALJ also determined that Plaintiff's gastroesophageal reflux disease, depression, anxiety, and history of cocaine abuse were not severe. *Id.*

At step three, the ALJ determined that Plaintiff did not have any impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. Tr. 24–25. In particular, the ALJ found that Plaintiff's condition did not meet the requirements of Listing 1.02 for major joint dysfunction or Listing 1.04 for disorders of the spine. *Id.*

Before proceeding to step four, the ALJ found that Plaintiff had the residual functional capacity (RFC) to perform light work with the following exceptions:

> The claimant could stand and/or walk for up to 2 hours in an 8-hour workday; the claimant could never climb ladders, ropes or scaffolds; the claimant could occasionally climb ramps and stairs; the claimant could occasionally stoop, kneel, and crouch; the claimant can rarely crawl (defined as 10% of the time or less); the claimant could occasionally perform bilateral overhead reaching; the claimant could tolerate frequent exposure to extreme cold, extreme heat, wetness, humidity, noise, vibration, and workplace hazards such as unprotected heights and exposed moving machinery.

Tr. 25.

At step four, the ALJ determined that Plaintiff was unable to perform any past relevant work, either as a warehouse worker, a forklift operator, or an event coordinator. Tr. 31–32.

At step five, the ALJ relied on the testimony of a vocational expert to find that prior to June 19, 2015, the date at which Plaintiff became categorized as an individual of advanced age, there were jobs that existed in significant numbers in the national economy that the Plaintiff could have performed. Tr. 32–33. After June 19, 2015, there were no jobs that existed in significant numbers in the national economy that Plaintiff could perform. Tr. 33.

Accordingly, the ALJ concluded that the Plaintiff was not disabled prior to June 19, 2015 but became disabled, and remained disabled, as of that date. Tr. 34.

## STANDARD OF REVIEW

A court may set aside the Commissioner's denial of benefits only when the Commissioner's findings are based on legal error or are not supported by substantial evidence in the record as a whole. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted). Courts consider the record as a whole, including both the evidence that supports and detracts from the Commissioner's decision. *Id.*; *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007). "Where the evidence is susceptible to more than one rational interpretation, the ALJ's decision must be affirmed." *Vasquez*, 572 F.3d at 591 (internal quotation marks omitted); *see also Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) ("Where the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's.") (internal quotation marks omitted).

## DISCUSSION

Plaintiff raises two issues on appeal. He argues that the ALJ erred by: (1) improperly discounting Plaintiff's subjective symptom testimony; and (2) improperly relying on the testimony of a vocational expert. Because the ALJ improperly discounted Plaintiff's subjective

symptom testimony, the Commissioner's decision is reversed and remanded for further administrative proceedings.

## I. Plaintiff's Subjective Symptom Testimony

Plaintiff claims the ALJ improperly discounted his subjective symptom testimony. The ALJ is responsible for evaluating symptom testimony. SSR 16-3p, 2017 WL 5180304, at *1 (Oct. 25, 2017).

To evaluate subjective symptom testimony, the ALJ must engage in a two-step analysis. *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012). First, the ALJ "determines whether there is 'objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged.'" *Id.* Second, "if the claimant has presented such evidence, and there is no evidence of malingering, then the ALJ must give 'specific, clear and convincing reasons' in order to reject the claimant's testimony about the severity of the symptoms." *Id.* (citations omitted); *see also Brown-Hunter v. Colvin*, 806 F.3d 487, 492–93 (9th Cir. 2015).

To reject a claimant's testimony at the second step, "[g]eneral findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995); *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993)). "An ALJ does not provide specific, clear, and convincing reasons for rejecting a claimant's testimony by simply reciting the medical evidence in support of his or her residual functional capacity determination." *Brown-Hunter*, 806 F.3d at 489. Instead, "the ALJ must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony." *Holohan v. Massanari*, 246 F.3d 1195 (9th Cir. 2001); *see also*

*Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discount the claimant's testimony."). Additionally, subjective pain testimony cannot be rejected solely because it is not fully corroborated by objective medical evidence. *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991) (en banc) ("Once a claimant produces objective medical evidence of an underlying impairment, an [ALJ] may not reject a claimant's subjective complaints based solely on a lack of objective medical evidence to fully corroborate the alleged severity of pain."); *Reddick v. Chater*, 157 F.3d at 722 ("[T]he Commissioner may not discredit the claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence.").

In the first step of the two-step analysis, the ALJ concluded there was objective medical evidence of an underlying impairment that could reasonably be expected to produce the Plaintiff's pain or other symptoms. Tr. 26. The ALJ did not identify any evidence of malingering. In the second step, the ALJ summarized Plaintiff's symptom testimony. *Id.* Plaintiff reported constant pain, the inability to lift more than "10-15 pounds, maybe 20 at most,"[3] the inability to walk more than three or four blocks without resting, and the need to stand after sitting for only five minutes. *Id.* The ALJ then summarized the medical evidence to conclude broadly that "while claimant's statements concerning the intensity, persistence and limiting effect of these symptoms are generally persuasive, they are not fully supportive of a finding that he was entirely precluded from work activities since the date of the alleged onset of disability." *Id.*

---

[3] The Court notes that Plaintiff's hearing testimony and his Function Report offer slightly different estimates of his symptoms and limitations. For example, Plaintiff in his Function Report states he cannot lift more than ten pounds. Tr. 26. In his hearing testimony, Plaintiff states he cannot "see [himself] lifting more than 10-15 pounds, maybe 20 at most." *Id.* To the extent this testimony conflicts, the Court lists Plaintiff's more liberal estimates.

An ALJ's general recitation of the medical evidence in support of the residual functional capacity determination is not sufficient to reject a claimant's subjective symptom testimony. Here, the ALJ failed to identify what particular testimony she found not credible and what particular evidence undermined that testimony. For example, Dr. Erik Maki conducted a comprehensive internal medicine evaluation of Plaintiff in November of 2013. Tr. 27–28. The ALJ summarized Dr. Maki's observations and diagnoses in her opinion. *Id.* Without reference to which of the Plaintiff's symptoms she found these observations and diagnoses undermined, the ALJ stated simply that "[i]n combination, [Dr. Maki's] objective findings reasonably support a limitation to less than the full range of light work. However, they do not fully support claimant's allegations of entirely work-preclusive limitations from his physical impairments since the date of alleged onset of disability." Tr. 28. This is a general summary, followed by a general conclusion. The ALJ has not identified, for example, whether Dr. Maki's findings undermine Plaintiff's alleged pain, his difficulty walking, or his need to stand after sitting for five minutes. Without more information as to what specific symptom testimony the objective medical evidence undermines, and why it does so, the Court cannot conclude that the ALJ did not arbitrarily discount the Plaintiff's subjective symptom testimony.

In response, Defendant argues the ALJ properly rejected Plaintiff's subjective symptom testimony as inconsistent with (1) objective medical evidence and (2) medical opinion evidence in the record. Def.'s Br. at 7–8. In support of the first point, Defendant identifies specific symptom testimony and explains how that testimony is contradicted by objective medical evidence. For example, Defendant argues that although Plaintiff alleges debilitating pain that restricts his ability to lift more than ten pounds, the ALJ "pointed out that a January 2013 physical examination revealed findings that were generally unremarkable, including intact

strength, sensation, reflexes, and 'no bony tenderness.'" Def.'s Br. at 7. However, a district court cannot affirm the Commissioner's decision on grounds that the ALJ did not invoke. *Burrell v. Colvin*, 775 F.3d 1133, 1141 (9th Cir. 2014) (citations omitted); *see also Trevizo v. Comm'r*, 871 F.3d 664, 677 n.4 (9th Cir. 2017) (holding that the district court erred in looking beyond the ALJ's stated reasons and explanation to support the ALJ's opinion); *Marsh v. Colvin*, 792 F.3d 1170, 1172 (9th Cir. 2015) (stating that district courts cannot affirm the agency on grounds not invoked by the ALJ without violating the *Chenery* rule). The ALJ did not identify specific symptom testimony or explain how that testimony was contradicted by objective medical evidence, and the Court cannot rely on the Defendant's post-hac rationalizations.

In support of its second point, Defendant relies on a single conclusory sentence—that "in sum, the medical evidence as a whole including medical opinion evidence supports the above listed residual functional capacity assessment"—to argue the ALJ rejected Plaintiff's subjective symptom testimony because it conflicted with medical opinion evidence in the record. Def.'s Br. at 8; Tr. 31.

After assessing the objective medical evidence, the ALJ summarized the medical opinion evidence provided by several doctors. Tr. 29–31. These doctors include Dr. Hsu, a treating physician; Dr. Maki, a consultative examiner; and two state agency physicians. *Id.* at 29–30. However, there is no indication the ALJ relied on these opinions to reject Plaintiff's subjective symptom testimony. Rather, the ALJ simply concluded that each doctor found Plaintiff capable of less than the full range of light work. In contrast, when discussing the objective medical evidence, the ALJ repeatedly concluded that it did "not fully support claimant's allegations of entirely work-preclusive limitations." *Id.* at 28. While this statement is too general, it does at least indicate the ALJ intended to use the evidence to undermine Plaintiff's subjective symptom

testimony. There is no similar language connected with the medical opinion evidence. Thus, although the ALJ may have relied on medical opinion evidence to formulate Plaintiff's RFC, there is no evidence that she relied on this evidence to reject all or part of Plaintiff's subjective symptom testimony. Without medical opinion evidence, the ALJ appears to have relied solely on objective medical evidence. An ALJ may not rely solely on objective medical evidence that fails to fully corroborate the alleged severity of pain to reject a plaintiff's subjective complaints.

The ALJ erred by failing to provide clear and convincing reasons, supported by substantial evidence in the record, for rejecting Plaintiff's subjective symptom allegations. The Court therefore remands this case for further proceedings.

## II.    The ALJ's Analysis at Step 5

Plaintiff argues the ALJ erred in step 5 by (1) failing to assess Plaintiff as sedentary under the Medical-Vocational Guidelines and (2) using a vocational expert ("VE") to identify light jobs that Plaintiff could perform.

In step 5, the ALJ must determine whether there are "specific jobs existing in substantial numbers in the national economy that [a] claimant can perform despite [his] limitations." *Johnson v. Shalala*, 60 F.3d 1428, 1432 (9th Cir. 1995). In making this determination, an ALJ may rely on either the Medical-Vocational Guidelines ("the grids") or the testimony of a VE.

The grids present "a short-hand method for determining the availability and numbers of suitable jobs for a claimant. The grids categorize jobs by their physical-exertional requirements, and set for a table for each category." *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006) (citations omitted). These physical-exertional categories are: sedentary, light, and medium. 20 C.F.R. Pt. 404, Subpt. P, App. 2. Sedentary work is defined as "lifting no more than 10 pounds at a time, and occasionally lifting small items." SSR 83-10, 1983 WL 31251, at *5. In an eight-hour work day, sedentary work involves standing and walking for no more than two hours. *Id.* Light work is defined

as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." *Id.* Because of this frequent lifting or carrying, "the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday and/or sitting most of the time but with some pushing and pulling of arm-hand or leg-foot controls." *Id.* at *6. Additionally, "[r]elatively few unskilled light jobs are performed in a seated position." *Id.*

"Where application of the grids directs a finding of disability, that finding must be accepted by the Secretary." *Lounsburry*, 468 F.3d at 1115–16 (emphasis and alterations omitted) (quoting *Cooper v. Sullivan*, 880 F.2d 1152, 1115–16 (9th Cir.1989)). In other words, "[t]he grids serve as a ceiling, establishing a claimant's maximum functional capacity." *Id.* at 1116.

An ALJ may rely on the grids alone only "where they *completely and accurately* represent a claimant's limitations." *Tackett v. Apfel*, 180 F.3d 1094, 1101 (9th Cir. 1999). "If a claimant's strength limitations differ from the technical definitions of sedentary, light, or medium work—for example the claimant falls somewhere between sedentary and light work—then the claimant is said to have exertional limitations that are not described by the grids." *Desrosiers v. Sec'y of Health and Human Servs.*, 846 F.2d 573, 579 (9th Cir. 1988) (citing 20 C.F.R. pt. 404, subpt. P, app. 2 § 200.00(d), (e) (1987)). In this scenario, where a claimant has exertional limitations not described by the grids, the ALJ must use the testimony of a VE. *Id.* at 580. Specifically,

> The Secretary may base a finding of "not disabled" on the fact that a claimant can perform *some,* although not all, light work only if such a finding is supported by both the medical evidence *and* the testimony of a *vocational expert.* To make such a finding, however, the Secretary is required to call a vocational expert and hear testimony as to whether the claimant can perform *enough* light jobs in the national economy to warrant a finding of "not disabled."

*Id.* (citations omitted) (emphasis in original).

When relying on the testimony of a VE, an ALJ must identify and obtain a reasonable explanation for any conflicts—or apparent conflicts—between the VE's testimony and information in the Dictionary of Occupational Titles ("DOT"). SSR 00-4p, 2000 WL 1898704; *Gutierrez v. Colvin*, 844 F.3d 804, 807–08 (9th Cir. 2016). The DOT describes broad occupations rather than specific jobs. *Gutierrez*, 844 F.3d at 807. This means the DOT provides general, collective information about, and maximum requirements for, an occupation at large. *Id.* at 807–08. It does not provide a description of a specific job within that occupation. An ALJ is therefore "entitled to rely on the expert's 'experience in job placement' to account for 'a particular job's requirements.'" *Id.* at 809 (quoting SSR 00-4p, 2000 WL 1898704, at *2).

Here, the ALJ determined that Plaintiff can perform light work, with restrictions. Tr. 25–31.[4] Plaintiff argues that, in reality, he can only perform sedentary work. Therefore, the ALJ should have assessed him under the sedentary grid, which would mandate a finding of disabled.

The Court does not agree. Plaintiff appears to argue that, based on his standing restriction alone, the ALJ was required to find he could only perform sedentary work. The ALJ found that Plaintiff could stand or walk for no more than two hours in an eight-hour day. Tr. 25. The ALJ did not identify any additional exertional limitations. *See* Tr. 25. By inference, the ALJ concluded that Plaintiff is capable of frequently lifting or carrying objects that weigh up to ten pounds, and occasionally lifting objects that weigh up to twenty pounds. *See* SSR 83-10, 1983 WL 31251, at *5 (defining light work and sedentary work). Thus, the ALJ concluded that Plaintiff's RFC fell somewhere between sedentary and light work, and therefore Plaintiff could

---

[4] Plaintiff argues that "[t]he ALJ's failure to analyze the case on the sedentary grid, where a favorable disability decision is mandated as of Plaintiff's 50th birthday, was premised upon her reliance upon VE testimony that diverged without adequate explanation from the Dictionary of Occupational Titles." Pl.'s Br. at 11. The ALJ did not rely on VE testimony when deciding to analyze the case on the light grid. Rather, the ALJ concluded that Plaintiff could perform light work with restrictions "after careful consideration of the entire record." Tr. 25. The ALJ only questioned the VE about light jobs. Tr. 65−68.

perform light work with restrictions. With this RFC, the VE identified three light jobs that Plaintiff could perform with his standing restriction.[5]

Where a plaintiff can perform some, if not all, light work, the ALJ may still conclude the plaintiff is not disabled, so long as that conclusion is supported by both medical evidence and the testimony of a VE. Here, the ALJ concluded that Plaintiff could perform some but not all light work. Because the grids alone did not completely and accurately represent Plaintiff's strength limitations, the ALJ correctly relied on VE testimony to conclude that Plaintiff could perform enough jobs in the national economy to warrant a finding of not disabled.

Plaintiff also argues that the VE's testimony that Plaintiff could perform three light jobs conflicts with the DOT without reasonable explanation. Specifically, Plaintiff argues the VE identified light jobs that could be performed by someone who could only stand or walk for two hours in an eight-hour work day, while—by definition—light jobs require a worker to stand or walk for approximately six hours in an eight-hour work day.

The Court does not agree. As an initial matter, it is not clear there is a conflict, apparent or otherwise. Though light jobs typically require frequent standing or walking, the VE identified three light jobs that Plaintiff could perform with his standing restrictions: production assembler (706.687-010), office helper (239.567-010), and laundry sorter (361.687-014). Tr. 67–68. These jobs do not explicitly identify a frequent walking or standing component. Moreover, the DOT classification and description acts as a maximum requirement for the occupation at large—while a light job *may* require a worker to walk or stand for up to six hours in an eight-hour day, it does not necessarily do so.

---

[5] The Court notes that the ALJ was directed to review Plaintiff's subjective symptom testimony on remand. Should the ALJ conclude that, based on Plaintiff's subjective symptom testimony, Plaintiff is in fact limited to sedentary work, the grids would mandate a finding of disabled.

Even if there is a conflict, the ALJ properly addressed that conflict by asking the VE (1) whether the identified jobs could be performed by someone who could only walk or stand for two hours in an eight-hour day and (2) whether his testimony conflicted with the DOT. The VE testified that, based on his professional work experience, each job he identified was either typically performed seated, or frequently modified so that it could be performed seated. Tr. 67. Where a job was not typically performed seated, but could be modified to accommodate a sitting option, the VE reduced his estimate of available national jobs. *Id.* The VE further testified that, with two exceptions, his testimony was consistent with the DOT. Tr. 69. For those two exceptions, the VE explained that he based his testimony on his professional experience. Tr. 69.

An ALJ may rely on a VE's experience in job placement to account for a particular job's requirements. Here, the ALJ relied on a VE's experience to determine that Plaintiff could perform three specific light jobs. The ALJ followed up with questions about whether the VE's testimony conflicted with the DOT, and she obtained a reasonable explanation for any potential conflicts. The ALJ did not err in relying on VE testimony to identify light jobs that Plaintiff could perform.

**III.    Remand for Further Proceedings.**

The decision whether to remand for further proceedings or for immediate payment of benefits is within the Court's discretion. *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). To determine which type of remand is appropriate, the Ninth Circuit uses a three-part test. *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014); *see also Treichler v. Comm'r*, 775 F.3d 1090, 1100 (2014) ("credit-as-true" rule has three steps). First, the ALJ must fail to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion. *Garrison*, 759 F.3d at 1020.  Second, the record must be fully developed and further

administrative proceedings would serve no useful purpose. *Id.* Third, if the case is remanded and the improperly discredited evidence is credited as true, the ALJ would be required to find the claimant disabled. *Id.* To remand for an award of benefits, each part must be satisfied. *Id.*; *see also Treichler*, 775 F.3d at 1101 (when all three elements are met, "a case raises the 'rare circumstances' that allow us to exercise our discretion to depart from the ordinary remand rule" of remanding to the agency).

Here, Plaintiff argues the Court should issue a remand for an award of benefits because, as of the alleged date of disability, Plaintiff was fifty years of age with no transferable skills and therefore conclusively disabled under sedentary grid rule 201.14. The Court did not, however, find the ALJ erred by relying on VE testimony rather than the sedentary grid. Rather, the Court found the ALJ erred by failing to provide clear and convincing reasons, supported by substantial evidence in the record, for rejecting Plaintiff's subjective symptom allegations. These allegations include statements from Plaintiff that he can lift no more than ten pounds; that he can see himself lifting no "more than ten to fifteen pounds, maybe twenty at the most;" that he cannot walk more than two blocks without resting; that he cannot walk more than three to four blocks without resting; and that he suffers from debilitating pain. Tr. 26. Alone, these allegations do not require the ALJ to find the claimant disabled. Plaintiff's allegations of debilitating pain also arguably conflict with doctors' opinions that Plaintiff is nevertheless able to perform light work with restrictions. *See* Tr. 29–30. Because there are outstanding issues with regard to Plaintiff's symptom testimony, and it is unclear what impact crediting his testimony would have on the ultimate disability determination, the Court declines to remand this case for the payment of benefits.

## CONCLUSION

The decision of the Commissioner is reversed and remanded for further administrative proceedings to consider whether Plaintiff was disabled between November 27, 2012 and June 18, 2015.

IT IS SO ORDERED.

Dated this 23 day of Oct, 2018.

*Marco Hernández*
MARCO A. HERNÁNDEZ
United States District Judge